Case 24-1202, Andrew Randolph versus Matt Macauley, oral argument 15 minutes per side. Ms. Primus for the appellant. Ms. Primus, you may begin. Good afternoon and may it please the court. Eve Brensky Primus on behalf of the appellant, Andrew Maurice Randolph. A man who leaves his home for less than one day after getting into a fight with a co-tenant does not abandon the belongings he has in his house. Because the last reasoned state court decision unreasonably distorted record facts to find abandonment, AEDPA's deferential standard of review no longer applies. And under a de novo standard of review, there was no abandonment. Mr. Randolph should be granted habeas relief because his Fourth Amendment rights were violated when the police searched his belongings without a warrant and without valid consent. And his trial counsel was constitutionally ineffective for failing to file a meritorious suppression motion to exclude evidence the state admitted was prejudicial. In this case, the state court made multiple unreasonable determinations of fact that strip its abandonment decision of deference under AEDPA. In deciding that Mr. Randolph did not have a reasonable expectation of privacy in his bags, the state court determined as a matter of fact that there was no explicit evidence he had a subjective expectation of privacy in his bags or their contents. This is your argument seems to be based on a cat's reasonable expectation of privacy reasoning. But I noticed you also raising a Jones argument. But I'm wondering, was was there an argument made in the state court under Jones? Your Honor, before the state courts, we did cite federal law arguing against abandonment, emphasizing the importance of intent in the abandonment inquiry, which is necessary to the property-based approach. And as your Honor wrote in Miller v. Genovese in 2021, a federal court reviews the claim, not particular cases cited or the specific arguments made. Would you say those are different theories? In other words, a Jones theory and a cat's theory? I guess, how would you approach that? I'm sorry, I apologize. In other words, one way asking the question is, could you win under one and lose under the other? Is it possible? It is possible to win under one and lose under the other. I suppose if you were to say that someone did not have a reasonable expectation of privacy under cats, but did have a property-based approach under Jones. But I would say, your Honor, that the same is true of the claims that were raised in the Miller v. Genovese case that Judge Bush authored. In that case, the petitioner had raised a Crawford confrontation claim. And this court held that that preserved also a Davis-Olden-Vanarsdale confrontation claim, because it is all part of the Confrontation Clause analysis. So in this case, there were so many multiple unreasonable determinations of fact that this court need not even reach the contrary to analysis. It can reach de novo review under the unreasonable determinations of fact as well. In the state court's determination. Counselor, when you talk about the unreasonable determinations of fact, I know that we're looking at the 2019 Michigan Court of Appeals decision. Do we also consider any factual determination from the Michigan Supreme Court decision that remanded the case back to the Michigan Court of Appeals? Under Wilson v. Sellers, this court looks through the second denial by the Michigan Supreme Court and reaches the Court of Appeals decision that was the second reasoned decision by the Court of Appeals. So it does not go all the way back to the Michigan Supreme Court's decision, which was based on a conflation of ineffective assistance and plain error standards. If the court looks at the last reasoned state court decision by the Court of Appeals, it will see that the Court of Appeals explicitly said, as a matter of fact, that there was no evidence to support any expectation of privacy. That is patently unreasonable in light of the record. Kenesha Fant testified. Isn't that illegal? I guess I was struggling with how to break out the legal conclusion and factual finding. It seems to me whether there's an expectation of privacy, like, think of it like summary judgment or whatever, except all the facts in your favor. And then the question is, is there an abandonment? And I may agree with you on that, the latter point, but I'm thinking of it more as a legal theory than a factual one, I guess. Well, Your Honor, I would point this court to the Supreme Court's decision in Brumfield v. Kane. In that case, the court was addressing an Adkins claim, and it held that the state court made unreasonable determinations of fact under D-2 when that court determined that the record failed to raise any questions as to Brumfield's impairment in adaptive skills. The court pointed out there was evidence in the record of adaptive skills in the form of premature birth, hospitalization, seizures, etc. That's exactly the kind of claim that we are raising here, and it's properly considered as a D-2 claim rather than a D-1 claim. The state court here held there was no evidence that he had a subjective or objective expectation of privacy. And just as in Brumfield, the record belies that factual determination. Kanisha Phan said he had— Wasn't that based on the fact that he didn't testify, like, at the Guenther hearing? He didn't testify to talk about his subjective expectation of privacy in whatever the property was. Well, as Your Honor knows, a subjective expectation of privacy can be established through testimony, but it can also be established through evidence. And Kanisha Phan testified to Mr. Randolph's own words. She said he explicitly indicated, I want my clothes and shoes, referring to the items that he was packing into bags in their shared home. When he packed those items into bags, he exhibited a subjective expectation of privacy. When he told his co-tenant that he wanted those bags, he exhibited a subjective expectation of privacy. In fact, Kanisha Phan herself understood he wanted his belongings, as evidenced by the fact that she and her family delivered them to his father's house after they had an argument that morning. So this record has many, many different facts that indicate a subjective expectation of privacy, and the court's statement that there was no evidence of that expectation is patently unreasonable. Can I take you down a slightly different path? Although I want to make sure you're done with anything you wanted to say on that before I do. All right. Well, the thing I would say is there were, as I said before, that was just one of the many unreasonable determinations of fact that the court made. They also held, as a matter of fact, that this was Kanisha's house and not his house, and that is belied by the record. Kanisha herself admitted he lived at that house with her, and they had lived together for a year and a half up to that point. And the state court held as a factual matter that he failed to come back and retrieve his belongings on a timely basis. That, too, ignores record evidence. He was arrested that very day, and his father testified. He came back to get his belongings immediately after he was released. So under a de novo standard of review, this court's decisions indicate that there was absolutely not abandonment here. This court has said in Tolbert and Sanders and Eden that a person needs to do more than just walk away from something as private as their own luggage in order to establish abandonment. And as this court made clear in Watson versus Pearson, the abandonment exception has never been applied to property that was left unattended in a person's own residence for a short period of time. In fact, Watson said you can leave your home to avoid police and still not abandon an expectation of privacy in the belongings in that home. So I would say that is my argument with respect to abandonment. I can move on to the argument with respect to the Fourth Amendment violation or answer your question, Judge Thapar. Well, let me ask you this. Bermitte, the guy who came in, he was the Flint Police Department, is cross-designated to the ATF. He reviews the evidence, as I understand it. He looks at it. He sees that there was ammo found that they believed was your client's ammo. And as a result, he looks him up, finds he's a felon, and authors are warned. Correct? Is my summary correct? So when he makes that probable cause determination, does he have a duty of inquiry to try and predict what courts will do with the probable cause determination? And if that is your position, what's the best case for that? I'm not saying he has some duty to predict. What I'm saying is that what he did was a direct fruit of the unlawful search of Mr. Randolph's belongings. I get that. So I guess I'm not going that way, and I'm going to tell you why. Let me ask you a separate question, because the way I am thinking about this is, I looked at it, and I thought, Utah v. Strieff. And why isn't that case controlling here, where the gun is ultimately found as a result of the brother's parole status, which is independent? And you remember Utah v. Strieff. You're nodding yes, Professor, so you obviously know it well. So go ahead. You've obviously got the answer, so I want to hear it. So this is completely different from Utah v. Strieff, right? Because in Utah v. Strieff, the warrant that was found was independent of the illegality of the police officer in stopping Mr. Strieff. And that's why it was an intervening service. But it was only as a result. I'm sorry to interrupt you. I apologize. But it was only as a result of the officer stopping him in the first instance, just like here, when they go and arrest your client. It's just fortuitous that the brother is on parole at the time, which in theory allows them to search. Well, the parole status, as the state pointed out, the parole status here is connected to a Michigan Administrative Code provision that only permits them to search a parolee if they have reasonable cause to believe that a violation of parole exists. Sure, but you wouldn't have standing. I mean, then we go down the standing route and all that, your client's standing. Well, not if they're using it for independent source, right? Because what I'm saying- I'm not saying they're using it for independent source versus attenuation. In other words, it's two months later, under Utah v. Strieff, it's two months later, it's an independent basis, obviously, to search. But like Utah v. Strieff, it's unrelated to the poison, so to speak. But if they're going to rely on it for attenuation, Mr. Randolph still has to have the ability to respond and object to the attenuation basis. And so what I'm saying is that the parole condition would not have provided that independent source because they would not have been able to rely on the parole condition, but for the ammunition that they had found. That is what gave them the reasonable cause to believe that a violation of parole existed. So it is not independent, and it doesn't attenuate. It's connected to the very illegality at play here. Yeah. Okay. Any further questions? Okay. You'll have your full time for rebuttal. Thank you very much. Thank you, Your Honor. Mr. Shimkus, you may proceed. Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court, Assisting Attorney General Scott Shimkus, appearing on behalf of Respondent. Your Honors, to prevail in this appeal, Petitioner Randolph really has to show three things. So the first is that no reasonable basis could have supported counsel's decision to not move for suppression in this case. The second is that any Fourth Amendment challenge would have to be meritorious. And the third, and really most importantly here, is that no fair-minded jurist could possibly agree with the Michigan Court of Appeals' rejection of this claim. Because he can't meet all three of these, and even if one faltered, his claim would fail, habeas relief cannot be granted. Isn't Ms. Primus arguing for de novo review based on factual error? So why isn't that the last one? The last point's a good one, but what's your response to her argument then? Well, of course, Your Honor, she is arguing for de novo review. I think that's likely a recognition of how difficult it is to overcome it, per deference here. And so they're sort of searching for whatever grounds that they can. And so, as counsel pointed out, there are several allegations here of unreasonable factual determinations. But as we explained in our brief, those factual determinations were reasonable. For example, the Michigan Court of Appeals referred to the house as Kenesha's house. Well, we know it was Kenesha's house. Now, they didn't say that to the exclusion of it possibly, you know, Mr. Randolph being a co-tenant or something along those lines. But it's not false, it's not unreasonable to call it Kenesha's house. And, Your Honor, all of these things go to, this court said recently, I believe it was in White v. Plapper just maybe a few months ago. And it just speaks to a broader principle here that AEDPA and federal courts on habeas review are not supposed to be uncharitably construing state court opinions. They're not fly-specking opinions. They're not sort of dictating how state courts write their opinions. What matters is the decision that they reach. And is the decision that they reach, was that wrong? Was it so unreasonable that no fair-minded jurist could agree with it? And Mr. Randolph is trying to show these unreasonable factual determinations on things that there's, at a minimum, there's room for fair-minded disagreement. But really, they can't show that they're unreasonable. Let me ask you a question about the abandonment, because the fact that he fled her house, I mean, is your theory by fleeing the house, he's abandoned the property? Your Honor, it's not simply his act of flight. It's sort of the totality of circumstances here. It's what his actions and words exhibit his intent to be, which is he's packing up his things as they're arguing, and then they get into this, I mean, a really brutal fight here, sort of a knock-down, drag-out type fight. But I thought when he's packing up his things, so they agree to leave, he sleeps on the couch, they then get in the fight, right? But he agreed to leave the day before, and he left behind, I can't, I thought it was his stereo and his workout bench or something like that, and said, I don't want those, I just want the stuff in the garbage bags, or something to that effect. Isn't he saying, I want these, and these are my belongings? Sure. But, Your Honor, those facts cut both ways. Because if he's saying, I just want these things, you can have these other things, that's an indication, I don't plan on coming back. You can have those things. Those things stay. But if I leave in a hurry, if my plan is to take five bags and move out, and it's my stuff, and I've lived there, and I'm moving out, and I leave in a hurry for whatever reason, here he left because he beat her up, fine. So he leaves in a hurry, has he abandoned his stuff at that point? What if I leave in a hurry for an emergency? Do I abandon my stuff? No, Your Honor, because, again, if that was the only fact, yeah, I would agree with you there wouldn't be abandonment here. But again, it's totality of the circumstances. It's everything that happened. And one of the key things that happened here is, he knew the police were coming when he bolted out of that house. He knew the children were trying to call the police. But I guess what I'm losing sight of there is, why does that change the expectation of privacy, or whatever, in the stuff that I bagged up? Because we have plenty of cases that say, if you discard something, if you leave something behind, that's the language in, I believe, we cited United States v. Coffield, but there are a host of other cases that use the same standard, that abandonment is discarding things, it's leaving things behind, it's exhibiting an intent to not return to them. And how do you get that? So talk about that principle in the context of private home, as opposed to in a public place. Yes, Your Honor. So as counsel pointed out, Watson v. Pierson acknowledges that you can abandon your home. There are circumstances in which you can abandon your home. They just found in that case, he hadn't abandoned his home, because he had simply stepped outside, talked with the police officers, and then walked away. But it's different when the police officers are coming to them, they're pursuing them. And they say, I need to get out of here, and they don't care about the stuff they leave behind, and they just run. So you got in a place where a court held that the party had abandoned property at their own home? Actually, Your Honor, yes. I was thinking about that very question as I was preparing this. And I fully admit, this is not in my brief, so obviously take it for what you will. But there is a case from 1987 in the Second Circuit that held the suspects had fled their house. In that situation, they had left the state. What case is that? I'm sorry, Your Honor. It's United States v. I believe it's pronounced Levasseur. It's 816F2nd37, and specifically page 44. And I fully admit, this case is not directly on point, but it makes the point that you can abandon your home, because the defendants there had heard that the police were arresting their cohorts in various other places. So they left, they ditched their house, they moved on to a different state. Do you agree that Mr. Randolph preserved the Jones argument? No, Your Honor. And I'm glad that you asked about that, because it did remind me I wanted to discuss that. So the only place in the state court that I could find where Jones was mentioned, I believe, was in the application for leave to appeal to the Michigan Supreme Court at the very end of the direct appeal. So after the Michigan Court of Appeals issued their 2019 opinion that we're discussing today. But that's not enough for preservation or exhaustion. They would have to exhaust that with all of the state courts and not just the state court of last resort on discretionary review. And I do think that's substantively different. I think we can think of this as perhaps the difference between Strickland and the situation where we have presumed prejudice under chronic. It's not enough to just raise a Strickland claim and then to argue chronic later. You have to argue both. And so here, to argue Jones, that the claim should have been analyzed under an entirely different paradigm, is really a different argument. And even if it was preserved, it's really hard to fit this case under Jones. Jones was a trespass case because there the government placed a tracker on the person's vehicle. And so they already were doing something they weren't supposed to be doing. And they invaded, they trespassed against someone's personal property. Now here, I imagine the thrust of the argument as well, they went into his things and that's essentially a trespass. I didn't understand it to be that specific. I understood the argument to be that Jones created a property interest. In other words, the professor was relying on Jones for the property interest point. And that, thus, you had a property interest in your belongings. And so, and they hadn't, as a matter of property, hadn't abandoned the property by leaving the premises. Maybe I'm thinking about it too much, but that's the way I was thinking about it. Well, and I see counsel nodding here. So it's essentially affirming your interpretation here, Judge. But the problem is that Jones, the reason Jones was resolved on property law is because there was a trespass in that case. They're intertwined. It didn't just create this new line of analyzing Fourth Amendment claims under property. But we always analyze. I mean, maybe I'm thinking of it wrong, but I analyze, I often analyze claims under property. I mean, you often look to property interest to figure it out. It's a reasonable expectation of property. I mean, you can weave Jones into Katz. Right, right. And I think... Think of the garbage case, Greenwood or whatever it was, where they leave the garbage at the curb. That's, you've kind of abandoned it. You've given it up. You've put it out, right? You no longer have a property interest in it because you expect a third party to take it away. Sure. And I think, like I said, I guess I'm sort of sticking to my point here that the crux of Jones was trespass, and that there just was not a trespass in that sense here. And I think all of this goes... It's the idea of abandonment different under property law, as opposed to sort of the general Fourth Amendment analysis, where to abandon something under property law, you really have to give up your interest in it, where just leaving something here is not giving up your ownership interest in that particular property. I think you make a good point, Judge Mathis. I'm not sure that it is entirely different. I think you could think of abandonment either as a lack of expectation of privacy under Katz, or a relinquishment of sort of your property interest. But I think either way, you can certainly get to abandonment. And all of this really goes to... The point here, and what essentially we need to do, is not to prove the property was abandoned, or that there was specific types of consent authority. The question is whether it was reasonable for defense counsel to think that could be enough of an issue that he didn't need to file a motion to suppress, because he certainly could have lost. And we know that, in a way, that was part of his calculus, because he said on the... At the Ginther hearing, he testified that he believed there was no standing here, that there was abandonment concerns. And he said, ultimately, I didn't challenge the fruits of that first search because it didn't matter to this case. The ammunition that was found, it didn't have anything to do with the murder. It didn't match the caliber of the murder. And so that's not where I was going to focus my efforts. But doesn't he say that he didn't make a strategic decision? So, Your Honor, the Michigan Supreme Court, in their opinion, remanding this case to the Michigan Court of Appeals, said that he didn't have a strategic reason for it. And whether he said, I didn't have a strategic reason for it or not, the fact is, the reasons he stated very well can be termed as strategic, that he believed there wasn't standing, that there was abandonment. And, I mean, he points out on... In, for example, it's record 6-14, pages 1168 and 1202, that I didn't challenge that because it didn't matter here, because that ammunition didn't match the murder. And so I wasn't focusing my efforts there. We were focusing on, for example, the gunshot residue and the fact that someone else, namely the brother, committed this because the gun was found in his home. And I think that brings me to my final point, Your Honors, is that regardless of any issues with that first search, there are multiple reasons that the second search breaks away from that. It's not fruit of the poisonous tree. And that, the gun, is what matters. It's not the ammunition found in the first search. It's the gun that matters. And for that, there was no standing. Mr. Randolph couldn't claim... Perhaps he was some kind of co-tenant, I suppose, but he didn't claim any interest in the bedroom where they found the gun. The brother claimed that was my bedroom, the brother's bedroom. And so he didn't have any standing to challenge that. And on top of that, the parole status was a huge problem here. I know counsel tries to connect the parole status to that first search, but that's not true. Nothing about the first search told the ATF or the police that Mr. Randolph's brother was on parole. Did the police have the authority to search the house just because he was on parole? I'm just curious. So there did have to be reasonable cause. And they were there investigating a homicide because they believe the person who committed the homicide was there, who was also a felon. So they're both felons. They're affiliating with each other. And there's a suspicion that there's guns and possibly ammunition at this place. That's more than enough reasonable cause for a parole agent to do a search. What's your best case for that point, for the fact that a suspect is at a parolee's home, that that's enough to provide reasonable suspicion under Michigan law or whatever the authority is here for searching the house? I'm sorry, Judge, could you repeat that, please? Yeah. You seem to be saying, as I understand it, to search the parolee's home, you have to reasonable suspicion of a violation of probation. I'm sorry, probation. Parole. Parole. Parole. I'm sorry. So as I understand your argument, you're saying the fact that Randolph was a suspect gives reasonable suspicion to search the home for a violation of parole. Is that your argument? I'm saying that's one of the factors, Judge. That could be the sole factor, but everything that brought them there. And not only that, but the fact that- So I'm wondering now, what authority would you have for that? I guess I- Point two. Sure. And I don't have a state case for that, Judge. It's just sort of going off of the broader reasonable cause or reasonable suspicion standard that it's lesser than probable cause. And in fact, Michigan has decided sort of as a society that thereafter, the cause doesn't even need to be that high. Now, just when someone goes on parole, they sign a form that says, I agree to searches. That law came into effect just after Mr. Randolph's brother was on parole here. So there still had to be some reasonable suspicion here, but it's a low threshold. And I think it was more than that here. Unless you guys have any further questions, we ask you to affirm. Thank you. Anything further? Okay. Thank you, counsel. Thank you. Professor, you have four minutes. Thank you, Your Honor. I have a case for you, Judge, both with respect to that last question that you asked. It's actually a series of cases. It's Yabarra versus Illinois from the United States Supreme Court, Maryland versus Pringle from the United States Supreme Court, and United A person's mere propeniquity to someone else who is suspected of criminal activity does not give rise to individualized suspicion. So the fact that two people who had prior felony convictions were spending time together could not, under constitutional law, give the police reasonable suspicion to search that home. That's federal constitutional law. I assume we're talking about state law here, right? Well, under Michigan law, it says that they cannot actually go in unless they have reasonable suspicion, which is interpreted in peri materia with the federal standards. So the federal constitutional law comes into play there. So what we have here is a situation where there was an illegal search of Mr. Randolph's belongings, and that then led them to the house. They could not have independently searched that house based on the parole condition. And Utah versus Streiff, which Judge Thapar brought up before, has an explicit statement within it at page 238 that says part of why the warrant in that case was able to break the causal chain was because it was a pre-existed and untainted arrest warrant. And the untainted word there does a lot of work for the Streiff court. This warrant was not untainted. The entire basis for the warrant that the police obtained to arrest Mr. Randolph for being a felon in of ammunition was because of an illegal search of his belongings that led them to discover the ammunition. So there is nothing here to break the causal chain from that initial illegal search to the discovery. Am I right that you weigh the factors, in other words, for attenuation? I mean, that's what Utah talked about, the Streiff. And you have three factors to look at. The gap in time, which in Utah was minutes, in Brown v. Illinois is two hours. Here we're talking about about two months is the gap in time between when you say the tainted activity. You have the second issue, which is the presence of intervening circumstances. Here you have Bermitter come in. He looks at it. He makes a probable cause determination that leads to the warrant. I get your argument there. And then you have what appears to be, OK, they searched, maybe they made a mistake in searching, but it's nonetheless, it seems to me, negligent. And then you put that through the EDPA lens, it becomes problematic. Unless you're in the de novo world, it seems like it's extremely problematic. Well, Aaron, I would argue that we are in the de novo world because there was no determination by the state court that this warrant provided or that parole condition provided any sort of intervening circumstance to break this causal chain. And so there is no state court judgment on the merits with respect to that. If you're looking at deficiency, it's interesting, right? Because it depends how you're looking at it. If you're looking at it, you know, was the attorney plainly incompetent by not following the motion? And here you've got an arguable basis, which a Well, I would argue, Your Honor, that this isn't a basis a jurist could accept for the following reasons. Like in this court's decision in United States versus Gross, they cited United States versus Najjar with respect to that first factor of time and said that applies more when you're dealing with fruits from witness testimony. The United States Supreme Court said a similar thing in United States versus Cicilline, that when you're dealing with physical evidence, that time factor doesn't matter as much. There isn't an intervening independent circumstance here. And therefore, we look at the flagrancy of the misconduct. And here, Sergeant Jones admitted the flagrancy of this misconduct. She went to that house to search Mr. Randolph's belongings and without permission from Mr. Randolph, even though he was in custody and she was able to get that permission. And the father said, that isn't my stuff. And she, without a warrant, knowing she did not have consent, then went and searched that stuff anyway. That's a flagrant violation in contravention of a lot of court precedent from Waller, Purcell, Taylor, et cetera. And so this was a flagrant rather than negligent violation. And for that reason, we would ask you to grant habeas relief. Judge Bush, did you have a question? No, I'm fine. Thank you. Okay. Judge Mathis, do you have anything else? No, thank you. Okay. Counsel, thank you both very much. Professor, thank you. I know you're doing this, I can't remember, CJA pro bono, one of the various things. So we greatly appreciate your very thoughtful and representation on your client's behalf and your excellent briefs. We appreciate it and look forward to hopefully seeing you in our court more often.